# CRIMINAL COURT OF BALTIMORE CITY.

---

Filed June 24, 1903.

---

STATE OF MARYLAND
VS.
MICHAEL A. MANNION.

---

*Edgar Allan Poe* and *Jas. R. Brewer, Jr.,* for the State.

*Wm. S. Bryan, Jr.,* and *Harry B. Wolf* for the traverser.

STOCKBRIDGE, J. —

Ordinarily where the Court performs the functions of a jury, it is sufficient to render simply a verdict of "guilty" or "not guilty". In the present case

it seems proper to depart somewhat from that rule, because of the importance of the issue and the widespread public interest in it, and to state very briefly the reasons upon which the Court, acting as a jury, finds its verdict.

In the course of the argument of the case there was a slight animadversion upon the action of the Grand Jury in connection with the indictment, which the Court does not feel that it is just to that body should be left without a word of comment. The published letter of the eminent counsel of the Board of Supervisors commenting upon the action of the traverser in this case, and others similarly situated, had spoken of them as having acted in "the clear violation of their plainly defined duties," and this letter had been by the Court specially called to the attention of the Grand Jury. Acting upon the interpretation of the law by such eminent counsel, as they clearly had a right to do, this and other indictments were found. Under such circumstances adverse criticism of their action does not seem to be justifiable; in fact, it is difficult to see how they could have done less and have been faithful to the obligations that they have assumed.

The present case, in the light of the evidence adduced, depends for its verdict entirely upon the construction to be placed on certain language contained in Sec. 88 of the Election Law. Stripped of all technical verbiage the alleged offense is a "wilful neglect," of a duty imposed by statute, viz: the duty of counting the votes as prescribed by Sec. 66 of the law, being Chapter 2 of the Acts of 1901. By Section 88 there are two classes of offenses against the law, for which a penalty is provided, namely, a wilful neglect or any corrupt or fraudulent conduct or practice in the performance of the duties imposed, that is, acts of omission and commission, alike render the person doing or omitting to do liable to punishment, if the act of doing be corrupt or fraudulent, or the act of omission be wilful. It is with this last only that this case has to do, and therefore depends upon the interpretation to be placed upon the term "wilful."

That interpretation is not necessarily the interpretation of the lexicographer, nor yet that of the civil

courts, but its interpretation in a Criminal Court in the construction of a penal statute, where language is invariably subject to strict construction. While in popular acceptation the term is often synonymous with "voluntary", yet such is not its meaning in the criminal law. An unbroken line of decisions in all parts of the country, and in the Supreme Court of the United States, has adopted the construction given to it by Chief Justice Shaw, in 20 Pickering, 220, with but slight change of phraseology, and this requires that for an act to be wilfully done, or wilfully omitted to be done, it must be done or omitted not merely voluntarily, but with a bad purpose, or an evil intent, or an evil mind, or with a bad intent, as it has been variously expressed. Unless, therefore, the evidence in this case is of such a character as to show a bad purpose upon the part of the traverser, the verdict must be "not guilty."

Matters of intent are necessarily those which are most difficult of proof, and therefore the evidence in such cases is necessarily largely or entirely circumstantial, but this does not mean that the proof of a fact establishes the animus with which it is done, or gives the court, sitting as a jury, the right without *some* evidence other than the mere fact to infer the intent or purpose. The undisputed evidence shows it to have been within the knowledge of the traverser that at a prior election the ballots of a certain precinct had by the authority of the Board of Supervisors been gone over, and as he understood it, counted or enumerated; that a dispute arising in the count upon the 5th day of May last, in the precinct where the traverser was a judge, it had been proposed by a judge of the opposite political party that the ballots then in hand should be taken to the Board of Supervisors *and there counted*, which was assented to by the traverser; there is no suggestion anywhere in the testimony, or any circumstance tending to show, that any thought or idea presented itself to the traverser that the ballots should not be counted, or the count delayed for some ulterior purpose; or that in assenting to the suggestion it was with any evil purpose. The testimony of both the clerks, and all three of the watchers is practically identical as to what transpired in the polling room, and there is no act or circumstance proved in the case in any manner to conflict with this positive testimony. In such a condition the court has no option but to enter a verdict of "not guilty."

The possible serious results which might ensue in any election by reason of the omission to count the ballots in a considerable number of the precincts, as was done in this case, seem to make it proper to add a word. The fact as testified to by the traverser of a belief upon his part that a practice similar to that to which he gave his assent had on a previous occasion received the sanction of the Board of Supervisors, is of great weight in determining the absence of evil intent in the present case. Whether his belief was well founded or not in point of fact, there seems to be no question that such an impression had obtained currency; that it was without warrant or justification in law, this Court desires to emphasize in such a manner that it shall be impossible for any one hereafter performing the duties of judge of an election to assert even a belief upon his part that an omission to count the ballots prior to leaving the polling room can receive any judicial sanction. With such knowledge brought home to the judges of election, or even, if not actually brought home, if made so public that it ought to be understood by all citizens of ordinary intelligence, the mere fact of failure to count might well be considered as affording evidence from which the evil might be inferred.